# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STEVEN D. PIERCE,      :

                        :      C.A. No. K16A-07-004 WLW

         Appellant,      :      Kent County

                        :

     v.                   :

                        :

ELIZABETH MURPHEY SCHOOL   :
& UNEMPLOYMENT INSURANCE:
APPEAL BOARD,          :

                        :

         Appellees.      :

Submitted: November 3, 2016
Decided: February 3, 2017

## ORDER

Upon an Appeal from the Decision of the
Unemployment Insurance Appeal Board.
*AFFIRMED.*

Mr. Steven D. Pierce, *pro se.*

Paige J. Schmittinger, Esquire, Deputy Attorney General, State of Delaware, Wilmington, Delaware; attorney for the Board.

WITHAM, R.J.

Appellant/Claimant Steven D. Pierce has appealed a decision of the Unemployment Insurance Appeals Board (referred to here as the "UIAB" or the "Board"). The Board's decision disqualified Mr. Pierce from receiving unemployment insurance benefits because the Elizabeth W. Murphey School (the "School") had just cause to terminate him.

Mr. Pierce cited five grounds in his notice of appeal, which he modified slightly in his opening brief. He argues (1) that the School failed to produce certain evidence, including police reports, a daily log book, and incident reports, (2) that a technical problem with the security video should have precluded the Board from considering it, (3) that the School used unfair disciplinary procedures in this case, (4) that the School's representative's credibility was not questioned and was based solely on his ethnicity, and (5) that the School's representative had used a similar restraint method on another student and not been disciplined.

The Court has reviewed Mr. Pierce's opening brief and the record on appeal. The decision of the Board is **AFFIRMED**.

## FACTS AND PROCEDURAL BACKGROUND

Mr. Pierce filed for unemployment benefits on March 14, 2016. He indicated that he had been discharged by his employer, the Elizabeth W. Murphey School, on March 10.

Mr. Pierce had been employed as a "house parent" for the Elizabeth W. Murphey School. The School claimed to have discharged him because he had used an improper restraint procedure on a youth in his care.

2

## *I. The Claims Deputy's Determination*

The record shows that a claims deputy requested additional information regarding the incident from the School. The School provided various documentary evidence showing Mr. Pierce's training but did not produce surveillance video of the incident.

The School stated that while the incident was on video, it was unable to send the video because "the youth . . . is in DFS custody," "the file is probably too large to email," and the "video is in m4a format and I believe many media players do not work with those files." The School did, however, provide a signed, written description of what the video showed.

The claims deputy found that Mr. Pierce was trained on the proper restraint techniques and that he was discharged after an investigation and observation of the video. The claims deputy held that the School thus met its burden to show willful or wanton misconduct.

## *II. Proceedings Before the Appeals Referee*

Mr. Pierce appealed the claims deputy's determination, arguing that it was his first restraint situation in which he had to worry about his safety, that he had not been warned that his actions were inappropriate, and that the other, more experienced staff members that were involved in the situation were allowed to return to work.

At the hearing before the appeals referee, a representative from the School, Michael Kopp, presented the School's reasons for discharging Mr. Pierce. Mr. Kopp began by providing a narrative of the events that occurred based upon having viewed

the surveillance video "which we save for our licensing agent, the State of Delaware." According to the policy handbook and training materials, Mr. Pierce and the other employees of the School were trained in a method called "Non-Violent Physical Crisis Intervention" (NVPCI) or, alternately, the passive restraint system. Mr. Pierce's participation in the training appears undisputed throughout the hearings.

As Mr. Kopp explained it, NVPCI is a seven-step restraint technique that, among other things, expressly prohibits exerting pressure on the client's thorax. Mr. Kopp then entered into a lengthy explanation of how, according to his examination of the video, the youth "at no time . . . sw[u]ng at any other staff member" and that, had he swung at Mr. Pierce, "Mr. Pierce's response as he would have [been] taught, would have been to capture that arm, go to level two [of the NVPCI technique], eventually, if needed, go to level three or four, whatever it took." Instead, according to Mr. Kopp's examination of the video, Mr. Pierce "physically put his hand on the front of the young man's collar bones toward his neck, it looked, for all intents and purposes on the video, that it was on the neck." Mr. Kopp testified that "the young man described that it was on his neck."

Mr. Kopp explained that there was a state licensing investigation of the incident. During the investigation, Mr. Pierce and the others present during the incident were interviewed. Mr. Pierce reported that the youth "was striking or attempting to strike staff." The police took the youth to Stevenson Detention Center, where he remained for four or five days. Mr. Kopp, after viewing the video and concluding that Mr. Pierce's report was inaccurate, called the Division of Family

4

Services to change the incident report and then the Director for Youth Rehabilitation to have the youth removed from the detention center. The State division responsible for licensing concluded that Mr. Pierce's discipline of the youth was inappropriate but had not yet determined whether it amounted to abuse.

Mr. Pierce attempted to cross-examine Mr. Kopp regarding an incident where Mr. Pierce allegedly saw him restraining a youth improperly. Mr. Kopp objected, and the referee cut off the line of questioning.

Mr. Pierce also cross-examined Mr. Kopp about the contents of the video, asking if a "blip" was present when the video was played back. At first, Mr. Pierce denied that there was a blip. But he also admitted that there was "a pause" in the video that was caused by the motion-activated nature of the recording: a pause indicated a period of time with no motion.

After cross-examining Mr. Kopp, Mr. Pierce testified on his own behalf. Mr. Pierce was administering medication to the youths at the facility when the incident took place. According to Mr. Pierce's version of events, a female coworker ran in to the room to ask Mr. Pierce to take care of a situation in another room. In the other room, Mr. Bryant was trying to remove the youth's shoes as part of the staff's ongoing effort to discourage him from running away from the School.

According to Mr. Pierce, the female coworker told him that he needed "to hurry up, get into the dining room because there's going to be a problem in there."

Mr. Pierce's narrative of events differed from Mr. Kopp's:

When I get in there, what the tape didn't pick up, Mr. Bryant was on the

ground attempting to remove the guy's shoes and the kid became violent and started swinging at Mr. Bryant. I came in, I just held him up against the wall. . . . Mr Bryan took him down. He grabbed the leg. Well, I grabbed his knee and we brought–he did not slam. . . . Mr. Bryant helped me–we put him down, we did not slam his head. If he had looked at tapes later, he will see that the boy sat on a bench. We sat side by side talking about it. . . . [W]e wrote our incident reports separate . . . We wrote that separate and both incidents said the same thing, reports said the same thing, that the youth was abusive, the youth did swing at Mr. Bryant.

The appeals referee found that Mr. Pierce was discharged for placing pressure on the youth's chest and holding him against the wall when the School's policies required that no pressure be exerted on his thorax.

### III. The Board's Determination

Mr. Pierce appealed the referee's determination to the full Board on the ground that the School did not present proper evidence. Mr. Pierce indicated that he had wanted to get a copy of the video and the incident reports to present to the Board.

The Board asked Mr. Kopp if he brought copies of the incident reports. He claimed that he could not produce them without consent. He also indicated that they were "unable to mechanically move [the videotape] from our server to a piece of, a format to get you people." Mr. Kopp also presented a Complaint Report from the Department of Service for Children, Youth and Their Families. The report stated that "the complaint was substantiated for improper discipline." The report indicated that Mr. Pierce and another staff member attempted to redirect the youth verbally. The video then "froze for about four seconds" before the investigator observed "what

6

appears to be [Mr. Pierce's] hand, it appears to be around the child's neck and the other hand grabbing one of the child's leg[s]."

Mr. Pierce attempted to object to the School's failure to provide certain documents including the statements of his coworkers. The Board asked him if had requested a subpoena, and he indicated that he had not.

The Board found that "the Claimant placed his hand on a resident's chest and held him against the wall in an attempt to restrain him in violation of Employer's Passive Restraint Policy. Claimant's actions are undisputed. Claimant was aware that this action was prohibited."

Mr. Pierce then filed this appeal.

## STANDARD OF REVIEW

This Court reviews decisions by the Board to determine whether they are supported by substantial evidence and free from legal error.[1] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] This Court "does not weigh the evidence, determine questions of credibility or make its own factual findings."[3] It merely decides "if the evidence is

---

[1] *Mathis v. Del. River & Bay Auth.*, No. N11A10-002, 2012 WL 5288757, at *2 (Del. Super. Aug. 22, 2012).

[2] *Bradfield v. Unemp't Ins. Appeal Bd.*, No. S11A-05-004, 2012 WL 5462844, at *1 (Del. Super. Mar. 13, 2012) (quoting *Gorrell v. Div. of Vocational Rehab.*, No. 96A-01-001, 1996 WL 453356, at *2 (Del. Super. July 31, 1996)).

[3] *Annand v. Div. of Unemp't Ins. Appeal Bd.*, No. S10A-05-003, 2011 WL 2698620, at *1 (Del. Super. July 1, 2011) (quoting *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

legally adequate to support the agency's factual findings."[4]  Absent an error of law, the Board's decision is reviewed for an abuse of discretion, and will not be disturbed where there is substantial evidence to support its conclusions.[5]  Questions of law are reviewed *de novo*.[6]

When a lower tribunal errs or abuses its discretion in admitting or excluding evidence, a reviewing court "must then determine whether the mistakes constituted 'significant prejudice so as to have denied the appellant a fair [hearing].'"[7]

"The employer bears the burden of proving by a preponderance of the evidence that the employee was terminated for just cause."[8]

## DISCUSSION

The Board's determination will be affirmed because any error in the proceedings below was harmless.

In some cases, this Court has held that "[a]n informal tribunal, such as the UIAB, is not bound by the Delaware Rules of Evidence, but it may follow those rules

---

[4] *Bradfield*, 2012 WL 5462844, at *1 (quoting *McManus v. Christiana Serv. Co.*, No. 96A-06-013, 1997 WL 127953, at *1 (Del. Super. Jan. 31, 1997)).

[5] *Annand*, 2011 WL 2698620, at *1; *Potter v. Dep't of Corr.*, 80 A.3d 961 (Table), 2013 WL 6035723, at *2 (Del. Nov. 13, 2013).

[6] *Crews v. Sears Roebuck & Co.*, No. N10A-08-011, 2011 WL 2083880, at *2 (Del. Super. May 11, 2011) (citing *Dep't of Labor v. Unemp't Ins. Appeal Bd.*, 297 A.2d 412, 414 (Del. Super. 1972)).

[7] *Green v. Alfred A.I. DuPont Inst. of the Nemours Found.*, 759 A.2d 1060, 1063 (Del. 2000) (quoting *Eustice v. Rupert*, 460 A.2d 507, 510 (Del. 1983)).

[8] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1222 (Del. 2015) (citing *Edmonds v. Kelly Servs.*, 53 A.3d 301 (Table), 2012 WL 4033377, at *2 (Del. Sept. 12, 2012)).

in its discretion so long as a party is not unduly prejudiced."[9] But this rule, while perhaps appropriate for other boards which lack more definite regulations, is not consistent with the law governing the conduct of the Board's hearings. The Board has the statutory authority to set how disputed claims will be handled:

> The manner in which disputed claims shall be presented and the conduct of hearings and appeals shall be in accordance with regulations prescribed by the Unemployment Insurance Appeal Board for determining the rights of the parties, whether or not such regulations conform to common-law or statutory rules of evidence and other technical rules of procedure.[10]

Pursuant its statutory authority, Board Regulation 4.7 governs the admission and consideration of evidence and specifies that "[t]he Board follows the Delaware Rules of Evidence" other than with respect to hearsay.[11] With respect to hearsay, the Board "may admit and consider hearsay evidence" but may not "base its decision solely on hearsay or other evidence not admissible under the Rules of Evidence."[12]

The Court thus considers Mr. Pierce's arguments relating to allegedly withheld documentary evidence, the testimony given regarding the security video, the weight the Board gave to the employer representative's testimony, and the preclusion of

---

[9] *Ellicott v. Stericycle Inc.*, No. N14A-05-010, 2015 WL 311094, at *5 (Del. Super. Jan. 23, 2015) (quoting *Baker v. Hosp. Billing & Collection Serv., Ltd.*, No. 02A-10-001, 2003 WL 21538020, at *3 (Del. Super. Apr. 30, 2003)).

[10] 19 *Del. C.* § 3321.

[11] 19 *Del. Admin. C.* § 1201.4.7.1; *see also Del. Supermarkets, Inc. v. Davis*, No. N14A-07-015, 2015 WL 2415655, at *2 (Del. Super. Apr. 29, 2015).

[12] 19 *Del. Admin. C.* § 1201.4.7.1.

cross-examination on Mr. Kopp's prior restraint of a youth.

*I. The School's Failure to Provide Certain Documentary Evidence*

The Board did not abuse its discretion by failing to compel the School to produce certain documentary evidence including police reports and witness statements. According to Board Rule 4.8, any party may "request subpoenas to compel a witness or witness to appear at a hearing or to compel the production of documents at or prior to a hearing. Such request shall be in writing . . . [and] be received by the Board at least 7 days prior to the hearing."[13] It is undisputed that Mr. Pierce did not request a subpoena[14] and thus cannot now complain that the School failed to produce evidence. The Board did not abuse its discretion by not issuing a subpoena that was never requested by Mr. Pierce.

*II. The School's Presentation of Testimony Regarding the Surveillance Video*

The Board abused its discretion by admitting testimony describing the content of the surveillance video. The error was not prejudicial to Mr. Pierce, however, because the Board relied on his own testimony instead of the improper testimony.

"To prove the content of a . . . photograph, the original . . . photograph is required, except as otherwise provided in these Rules or by statute."[15] "'Photographs include . . . video tapes and motion pictures."[16] The original would not be required

---

[13] *Id.* § 1201.4.8.1.

[14] R. at 97.

[15] D.R.E. 1002.

[16] *Id.* 1001(2).

if "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or . . . [n]o original can be obtained by any available judicial process or procedure; or . . . [t]he . . . photograph is not closely related to a controlling issue."[17]

The question of what happened in the video is closely related to a controlling issue: namely, whether Mr. Pierce executed a proper restraint technique. Mr. Pierce repeatedly objected to admission of testimony about the video and tried to raise objections to its reliability in any event. Mr. Kopp did not testify from personal knowledge of the events in the video; instead, his knowledge was gleaned from watching the video. Likewise, the licensing report was based on the author's review of the video, not from personal observation of the events depicted. It was incumbent upon the Board to issue a subpoena for the video or preclude testimony regarding its contents, assuming none of the exceptions of Delaware Rule of Evidence 1004 were available. Its failure to do so was an abuse of discretion.

Nevertheless, the Board came to the conclusion that there was just cause for termination based on Mr. Pierce's own narrative, and in particular on his testimony that he held the youth against the wall in violation of his employer's policies and Delacare regulations. Because the Board did not base its conclusion on the improperly admitted evidence, its admission was harmless.

*III. The Weight Given to the Employer Representative's Testimony*

The Board did not abuse its discretion by giving weight to the testimony of the

---

[17] D.R.E. 1004.

11

School's representative. As discussed above, the Court does not weigh the evidence,[18] and "the credibility of witnesses [is] within the sound discretion of the Board."[19] Mr. Pierce has pointed to nothing in the record that suggests that the Board based its credibility determination on Mr. Kopp's ethnicity. If Mr. Pierce wished to impeach Mr. Kopp's credibility, he was free to do so on cross-examination. The Court cannot second-guess the Board's determination based solely on a bare accusation from Mr. Pierce. Accordingly, the Court does not find that the Board abused its discretion in assigning weight to Mr. Kopp's testimony.

### *IV. Mr. Kopp's Prior Restraint*

The Court finds no abuse of discretion in the Referee's decision to exclude testimony regarding Mr. Kopp's alleged prior restraint of another youth. The Referee had discretion to exclude the evidence as irrelevant, and Mr. Pierce did not raise the issue before the full Board.

### CONCLUSION

The decision of the Unemployment Insurance Appeal Board is **AFFIRMED**. IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[18] *Annand*, 2011 WL 2698620, at *1 (quoting *Johnson.*, 213 A.2d at 66).
[19] 19 *Del. Admin. C.* § 1201.4.7.4.